104 F.3d 895
 Martin D. ROBBINS, Plaintiff-Appellant,
v.
Clarence SWITZER, et al., Defendants-Appellees.
Martin D. ROBBINS, Plaintiff-Appellant,
v.
Michael R. CLOUD, et al., Defendants-Appellees.
Martin D. ROBBINS, Plaintiff-Appellant,
v.
ORANGE COUNTY COURT, et al., Defendants-Appellees.
Martin D. ROBBINS, Plaintiff-Appellant,
v.
G.L. HOLMES, et al., Defendants-Appellees.
Martin D. ROBBINS, Plaintiff-Appellant,
v.
C.R. HALL, et al., Defendants-Appellees.
 Nos. 96-1053, 96-1142, 96-2212, 96-2213 and 96-2855.
 United States Court of Appeals,
Seventh Circuit.
 Submitted Dec. 6, 1996.
Decided Jan. 7, 1997.
 
 Martin D. Robbins, Bedford, IN (submitted on brief), pro se.
 Pamela Carter, Office of the Attorney General, Indianapolis, IN, for Defendants-Appellees.
 Before COFFEY, FLAUM, and EASTERBROOK, Circuit Judges.
 EASTERBROOK, Circuit Judge.
 
 
 1
 While in state prison, Martin Robbins filed several lawsuits under 42 U.S.C. § 1983. Some were dismissed because the pleadings were inscrutable, and Robbins did not respond to judicial orders calling for clarity. Other complaints were clear enough to reveal that the suits are barred by judicial or prosecutorial immunity, or the principle of Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), or fail to state claims on which relief may be granted. Robbins appealed five of his defeats. We must decide how the Prison Litigation Reform Act, Title VIII of Pub.L. 104-134, 110 Stat. 1321 (effective April 26, 1996) ("the Act"), applies to cases in which a person who is imprisoned at the time of the appeals is released before the full filing and docket fees have been paid.
 
 
 2
 Under 28 U.S.C. § 1915(a)(2), as amended by the Act,
 
 
 3
 A prisoner seeking to bring a civil action or appeal a judgment in a civil action or proceeding without prepayment of fees or security therefor, in addition to filing the affidavit filed under paragraph (1), shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined.
 
 
 4
 A prisoner who begins a civil action or files an appeal is not entitled to proceed without prepayment, a privilege § 1915(a)(1) extends to non-prisoners. Under § 1915(b):(1) Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of
 
 
 5
 (A) the average monthly deposits to the prisoner's account; or
 
 
 6
 (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.
 
 
 7
 (2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.
 
 
 8
 One other provision of the Act, 28 U.S.C. § 1915(b)(4), is potentially relevant:
 
 
 9
 In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.
 
 
 10
 Robbins was imprisoned when he filed all five appeals. Four of the suits, and two of the appeals, were filed before April 26, 1996. In none of the five suits has Robbins paid a dime toward the filing fees or tendered a prison trust account statement.
 
 
 11
 In each of the two appeals filed before April 26, the district court has certified that an appeal would be frivolous. We held in Thurman v. Gramley, 97 F.3d 185, 188-89 (7th Cir.1996), that an order permitting the appeal to go forward as non-frivolous is equivalent to "filing" the appeal for purposes of the Act, and that the obligation to pay the $105 filing and docket fees for appeals commenced before April 26 does not attach until the certification. Thurman builds on the principle, articulated in Abdul-Wadood v. Nathan, 91 F.3d 1023 (7th Cir.1996), that obligations under the Act depend entirely on the filing date of the appeal. Because Robbins is now out of prison, and neither appeal was filed for statutory purposes before his release, the Act does not apply at all to his first two appeals. This conclusion enables Robbins to avoid prepaying $210 in fees, but it does not advance his claims. Both of the appeals are frivolous, as the district courts concluded. We deny Robbins' motions to proceed in forma pauperis in Nos. 96-1053 and 96-1142, and summarily affirm the judgments, for the reasons the district judges gave. Both of these suits and appeals count as "strikes" for the purpose of 28 U.S.C. § 1915(g), should Robbins return to prison and initiate new litigation.
 
 
 12
 For appeals commenced on or after April 26, 1996, the Act applies in full measure. We concluded in Martin v. United States, 96 F.3d 853 (7th Cir.1996), that an appeal begins when the notice of appeal is delivered to the clerk's office or deposited in the prison mail system, see Fed.R.App.P. 4(c)--with the consequence that a prisoner must pay in full even if the court denies leave to proceed in forma pauperis and dismisses the appeal as frivolous. Robbins was a prisoner when he filed Nos. 96-2212, 962213 and 96-2855, and therefore is obliged to pay. His current status does not alter the fact that he was a prisoner when he filed the appeals. Section 1915(b)(1) is clear: "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee."
 
 
 13
 Section 1915(b)(4) provides that a case may continue even if the prisoner is unable to pay anything. If, when a prisoner files his appeal, the balance of his trust account is zero, the case proceeds despite the lack of payment. But when a prisoner does not adhere to the statutory system, a court may dismiss the appeal without regard to his ability (or inability) to pay. For example, if the prisoner does not furnish a statement of his trust account, we issue an order requiring him to do so within 21 days--with a warning that unless the information and requisite payment are forthcoming, we will dismiss the appeal for want of prosecution (but without relieving the prisoner of the obligation to pay up eventually, for that obligation is incurred, as it is for a solvent litigant, by the act of filing the notice of appeal). If the prisoner sends a trust account statement showing that even partial payment is not required, then the appeal proceeds under § 1915(b)(4), but if the prisoner disdains to comply with the order, the appeal ends.
 
 
 14
 Robbins was a prisoner and readily could have complied with § 1915(b)(1) when he filed his notices of appeal. He did not. After we issued orders requiring him to provide copies of the prison trust accounts and make partial payments, he responded that he had been released and is penniless. He did not, however, provide the copies of the prison trust account statements we directed him to supply, or an affidavit showing his current resources and income. For all this record reveals, the accounts contained ample funds at the time he filed the appeals, but were paid over to him on his release and spent on other things. If that is so, then his appeals must be dismissed for noncompliance with § 1915(b)(1). His current poverty would not authorize continuation of the appeals, if he had the resources to comply with the statute at the time the Act called for payment. Nor does his current poverty excuse his noncompliance with our orders, which required him to furnish copies of his prison trust account statements. Although he is now out of prison, the data pertinent to his prison accounts did not vanish (the prison likely gave him a closing statement when he left); the information still can be supplied. So, for example, if according to the trust account statements Robbins could (and therefore should) have paid $50 at the time he filed his appeals, and the trust accounts received no income before his release, then he must pay $50 now and may apply for forma pauperis status on the balance. How much Robbins actually must prepay depends on the application of the formula in § 1915(b) to the balances and income of his trust account through the day of his release.
 
 
 15
 This approach is congruent with the result, although not the reasoning, of McGann v. Commissioner, Social Security Administration, 96 F.3d 28 (2d Cir.1996), the only other case that has addressed the subject. The second circuit concluded that a prisoner must prepay the fee to the extent § 1915(b)(1) provides, but that the "required partial fee payments are to be made only while the prisoner remains in prison, and that, upon his release, his obligation to pay fees is to be determined, like any non-prisoner, solely by whether he qualifies for i.f.p. status." 96 F.3d at 30. McGann reached this conclusion because it believed that there is a conflict between § 1915(b)(1) and § 1915(b)(2): the former calls for full payment, yet the latter specifies a mechanism that won't work for ex-prisoners. Like Judge Miner, who dissented in McGann, 96 F.3d at 30-31, we do not see an inconsistency. Section 1915(b)(1) says that prisoners are liable for the full fees, but so is every other person who proceeds in forma pauperis; all § 1915(a) does for any litigant is excuse the pre-payment of fees. Unsuccessful litigants are liable for fees and costs and must pay when they are able. See McGill v. Faulkner, 18 F.3d 456 (7th Cir.1994). Section 1915(b)(1) says that notwithstanding § 1915(a)(1) a prisoner must prepay fees, to an extent determined by transactions in his prison account. Understanding this makes it easy to apply every part of the statute. The prisoner is liable for the whole fee (just like everyone else who proceeds IFP), and must prepay according to the statutory schedule. What excuses further prepayment after release, if the former prisoner is destitute, is not a conflict between § 1915(b)(1) and § 1915(b)(2), as the majority in McGann thought, but § 1915(b)(4), a provision neither the majority nor the dissent in McGann mentioned. Section 1915(b)(4) precludes the approach Judge Miner took; and the majority in McGann did not consider the approach we adopt here, requiring prepayment of the sum that should have been remitted before release. We have no reason to suppose that the second circuit would reject this option, so we do not think that this opinion creates a conflict in outcomes.
 
 
 16
 We cannot tell from the record in the three appeals filed after April 26 whether Robbins owed any prepaid fees under the statutory formula. Because this is a novel question, we give him 21 days to supply us with copies of the prison trust accounts, showing the balances at the time he filed his notices of appeal, plus income for six months before each notice of appeal and the time between the appeal and his release. If these appeals are to continue, Robbins must pay the amounts that according to the trust account statements he could have paid at the time he filed the appeal (and before his release). A dismissal for failure to pay that sum would not offend § 1915(b)(4); it would simply enforce the obligation created by § 1915(b)(1). The Act's effectiveness would be eroded if, during their final year of custody, prisoners could file suits and appeals without considering the financial consequences, planning to ignore the statute while in custody, divert trust account funds to other purposes, and plead poverty once released. Under the Act, release does not eliminate an obligation that could and should have been met from the trust account while imprisonment continued.
 
 
 17
 Robbins also must furnish an affidavit in the form provided by Form 4 in the Appendix to the Federal Rules of Appellate Procedure, so that we can tell whether to defer collection of whatever portion of the fees would have remained unpaid, on the date of his release, had the statutory formula been followed and proper pre-release payments made. Failure to furnish within 21 days the trust account statements, partial payment according to the statutory formula, and the affidavit, will be treated as abandonment of the appeals. If Robbins supplies the necessary documents and makes any required partial payment, we will move to the next stages: whether to permit further proceedings in forma pauperis or instead to approve the district judge's decision that each of the three appeals is frivolous.