**NORTHERN CALIFORNIA RIVER WATCH, a non-profit corporation, Plaintiff–Appellant,**

v.

**HUMBOLDT PETROLEUM, INC., Defendant–Appellee.**

No. 04–15381.

D.C. No. CV–03–01932–SBA.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 16, 2005.

Decided Jan. 13, 2006.

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Jack Silver, Northern California Environmental Defense Center, Santa Rosa, CA, for Plaintiff–Appellant.

Geoffrey H. Yost, Thelen Reid & Priest, LLP, San Francisco, CA, for Defendant–Appellee.

Before SCHROEDER, Chief Judge, FARRIS and CALLAHAN, Circuit Judges.

## MEMORANDUM *

On April 29, 2003, River Watch filed a Complaint, alleging a claim under California Business & Professional Code §§ 17200 *et seq.* in addition to certain claims under Section 6972 of the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901–6992k.

The district court dismissed the Complaint on January 28, 2004, on res judicata grounds. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.

## Discussion

### A. Res Judicata

In 2001, a consent judgment was filed in the Superior Court of California, settling a complaint filed against Humboldt Petroleum by the District Attorney of Humboldt County.

California law determines the preclusive effect of the Consent Agreement, since it was filed in California state court. *See* 28 U.S.C. § 1738; *City of Martinez v. Texaco Trading & Transp.,* 353 F.3d 758, 762 (9th Cir.2003).

> [Res judicata] applies when 1) the issues decided in the prior adjudication are identical with those presented in the later action; 2) there was a final judgment on the merits in the prior action; and 3) the party against whom the plea is raised was a party or was in privity with a party to the prior adjudication. Even if these threshold requirements are established, res judicata will not be applied "if injustice would result or if the public interest requires that relitigation not be foreclosed."

*Citizens for Open Access to Sand & Tide, Inc. v. Seadrift Assoc.,* 60 Cal.App.4th 1053, 71 Cal.Rptr.2d 77, 84 (1998) (citations omitted). River Watch concedes that the second criterion, that there be a final judgment on the merits, is met by the Consent Agreement.

### 1. Identical Issues

California applies a "primary right" analysis to determine whether identical issues were raised in separate litigations.

> Under California law, a cause of action is (1) a primary right possessed by the plaintiff, (2) a corresponding primary duty devolving upon the defendant, and (3) a harm done by the defendant which consists in a breach of such primary right and duty. Claims are "identical" if they involve the same "primary right." To determine if the issues in both actions involve the same primary right, we look to the rights sought to be vindicated and, specifically, to the claimed harm. The fact that various theories of recovery are asserted and various remedies are requested does not necessarily create different primary rights.

*City of Martinez,* 353 F.3d at 762 (citations omitted).

Res judicata does not preclude additional litigation if some new wrong occurs. However, new evidence of injury does not necessarily establish a new wrong. *See Supporters to Oppose Pollution v. Heritage Group,* 973 F.2d 1320, 1326–27 (7th Cir.1992) (holding environmental claims for ongoing pollution from closed waste dump precluded because existence of ongoing releases was known at the time of the initial suit); *Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist.,* 382 F.3d 743, 758 (7th Cir.2004) (holding that post-settlement claims of harm shared

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

identity with those covered by settlement because settlement "was intended to address the underlying causes of the continuing violations"). *But see Chesapeake Bay Found., Inc. v. Bethlehem Steel Corp.,* 652 F.Supp. 620, 628–29 (D.Md.1987) (holding that consent decrees providing prospective penalties for pollution discharged during months prior to correction of problem did not bar claims by plaintiffs for particular instances of pollution discharge). "In the final analysis the test would seem to be whether *the wrong for which redress is sought is the same in both actions." Unit-ed States v. Gurley,* 43 F.3d 1188, 1196 (8th Cir.1994) (internal quotation marks and citations omitted).

Res judicata does not apply to bar claims if the later suit seeks to assert interests of a different sort in the same transaction, such as private instead of public interests. *Compare In re Exxon Val-dez,* 270 F.3d 1215, 1227–28 (9th Cir.2001) (holding that parties asserting commercial and subsistence interests in fishing grounds could recover punitive damages despite prior parens patriae consent decree because they asserted purely private interests) *with Alaska Sport Fishing Assoc. v. Exxon Corp.,* 34 F.3d 769, 773–74 (9th Cir.1994) (holding that parties could not recover damages for loss of use and enjoyment of natural resources because of prior parens patriae consent decree); *see also City of Martinez,* 353 F.3d at 763 (distinguishing city's interest in recovering damages for loss of use of easement because of offender's pollution from state's interest in settling criminal charges with offender).

■ River Watch's claims are the same as those covered by the Consent Agreement. They stem from the same wrong, the release of petroleum from tanks, pipes, and other sources. While the Consent Agreement was signed in April of 2001, the remedial measures it required to correct the pollution from the three gas stations stretched to November 2001, December 2001, and September 2002. It also required monitoring past those dates. While River Watch is correct that it would not be precluded if it were to allege a new instance of pollution discharge, separate from the petroleum discharges encompassed by the Consent Agreement, it has not done so. The Complaint and the notice letter identify only the past instances of pollution. discharge, or new measures of the injury from the past discharges.

River Watch maintains that the notice letter alleges new instances of wrongdoing because it states that "[b]etween January 15, 1998 and January 15, 2003, HPI used and stored and *continues to use and store* petroleum products at each of its above referenced sites in a [polluting] manner." It points out that provisions of the Resource Conservation and Recovery Act, of which § 6972 is a part, provide for penalties to be measured day-by-day. *See, e.g.,* 42 U.S.C. §§ 6973(b), 6991e(a)(3). River Watch also argues that it stated in its letter that there may be unidentified secondary sources of the pollution, even though the consulting firm responsible for monitoring the gas stations recommends no action but monitoring. River Watch urges that these allegations, to the extent that they pertain to conduct after the Consent Agreement was signed, identify new instances of wrongdoing that were not encompassed by the Consent Agreement.

However, even under the liberal pleading standards of Federal Rule of Civil Procedure 8, River Watch has failed to identify a new wrongdoing. Simply identifying continuing harm from the same conduct is insufficient to overcome res judicata. River Watch does not identify any new actions that would suffice to state a claim for relief. *See Friends of Milwaukee's Rivers,* 382 F.3d at 758 (holding that con-

tinuing violations from the same underlying problem did not constitute separate and distinct causes of action from those identified in previous settlement that attempted to remedy underlying problem).[1]

River Watch also argues that its claims are not barred by res judicata because § 6972 provides for greater penalties and a different legal procedure than did the statutes under which the State sued. We reject the argument. The law under which a party files suit does not affect res judicata if the underlying harm is the same as was previously litigated. *See Seadrift*, 71 Cal.Rptr.2d at 86; *Supporters to Oppose Pollution*, 973 F.2d at 1325.

River Watch also argues that it alleges individual wrong to its members, as opposed to the public wrong that was the subject of its consent decree. However, the Complaint seeks no damages for individual wrongs, and identifies only general damage to "[t]he health, economic, recreational, aesthetic and environmental interests of PLAINTIFF'S members." These are the same interests that the State sought to protect in the Consent Agreement, signed by "the District Attorney, acting on behalf of and in the interests of the People."

### 2. Privity

"The concept of privity for the purposes of res judicata or collateral estoppel refers 'to a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights....' " *Seadrift*, 71 Cal.Rptr.2d at 87 (citation omitted). "The California courts further apply privity where 'the nonparty has an identity of interest with, and adequate representation by, the party in the first action and the nonparty should

reasonably expect to be bound by the prior adjudication.' " *City of Martinez*, 353 F.3d at 764 (citation omitted). "Under the *parens patriae* doctrine, 'a state that is a party to a suit involving a matter of sovereign interest is presumed to represent the interests of all its citizens.' " *Alaska Sport Fishing*, 34 F.3d at 773 (citation omitted); *see also Seadrift*, 71 Cal.Rptr.2d at 88–89.

■ River Watch brought its suit to vindicate the same public interest—"[t]he health, economic, recreational, aesthetic and environmental interests of PLAINTIFF'S members"—as was represented by the State in the Consent Agreement, and so it is in privity with the State.

■ River Watch argues that it is not in privity since in addition to those public interests, it represents its members' economic and personal interests, which could not be settled by the State. But the Complaint does not seek damages for economic injury to its members and even if it did, River Watch does not have standing to pursue damages for harms to personal interests. *See Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir.2004) ("We know of no Supreme Court or federal court of appeals ruling that an association has standing to pursue damages claims on behalf of its members.").

River Watch also argues that the district court failed to consider whether its membership includes persons from outside of California, which precludes it from being bound by the State of California. River Watch alleges that it is based in California and is organized to protect California's waterways. It does not allege injury occurring outside of California, nor does it allege that it represents citizens of other states. While a state acting pursuant to

---

**1.** *Friends of Milwaukee's Rivers* ultimately reversed the finding of res judicata, concluding that the parties were not in privity because the state's prosecution was not diligent. 382 F.3d at 754–55.

its parens patriae authority typically acts on the behalf of only its citizens, the public interest being represented by both parties is overwhelmingly that of California citizens, thus the parties are in privity.

### 3. Public Interest Exception

River Watch does not argue coherently for a public interest exception, but instead conflates its discussion of the public interest exception with its argument that it was unfair for the district court judge to act sua sponte. Nothing in the record suggests that it would be just or in the public interest to allow this suit, which expresses a simple disagreement with the State's chosen remediation, to proceed.

### B. Exception to Res Judicata in the Consent Agreement

■ River Watch argues that the Consent Agreement's language allows it to bring this suit. *See Norfolk S. Corp. v. Chevron, U.S.A., Inc.,* 371 F.3d 1285, 1288–91 (11th Cir.2004).

The relevant parts of the Consent Agreement are set forth in Sections VII and X.[2] Section VII states that the District Attorney may bring claims to enforce the Consent Agreement, or for violations of the Consent Agreement that constitute "subsequent violations of" California law "or other laws independent of the Consent Judgment and/or those alleged in the Complaint." Additionally, "the District Attorney is not limited to enforcement of the Consent Judgment, but may seek in another Action, whatever fines, costs, penalties, or remedies are provided for by law for failure to comply."

River Watch argues that each day in which a discharge continues constitutes a new violation of § 6972, entitling it to bring a subsequent suit pursuant to Section VII. However, even if this provision

provided an exception to normal res judicata principles, it is specific to the District Attorney.

Section X states:

This Consent Judgment is a full and binding resolution ... of any violations of Proposition 65, the UST Law, the UST Cleanup Act, the Unfair Competition Law, or any other statutory or common law claim that could have been asserted against defendants for failure to comply with those laws, or any other claim based on the facts or conduct alleged in the Complaint. Compliance with the terms of this Consent Judgment resolves any issue now and in the past concerning compliance by defendant Humboldt ... with the requirements of Proposition 65, the UST Law, the UST Cleanup Act, the Unfair Competition Law, or other statutory or common law requirements arising under California law, with respect to past or present violations of those laws to date.

While River Watch correctly points out that this paragraph states that the Consent Agreement covers only violations "to date," this does not create an exception to the principles of res judicata. There is no language supporting the ability of River Watch to bring suit for wrongs covered by the Consent Agreement.

### C. Due Process

■ River Watch argues that its due process rights were violated when the district court sua sponte dismissed the Complaint, leaving River Watch no opportunity to challenge the basis of the dismissal.

River Watch overstates its case factually. Humboldt briefed the issue of res judicata in its motion to dismiss with regards to the state law claim. The state

---

**2.** While Section I speaks of not waiving rights, it also provides that it does not affect

any other provision of the Agreement, so it is not controlling.

claims present the same res judicata issues as do the federal claims. Contrary to River Watch's claim at oral argument, Humboldt's brief addressed the issue of privity. River Watch had ample opportunity to address the requirements of res judicata in its memorandum in opposition. *Compare Stewart Title Guar. Co. v. Cadle Co.*, 74 F.3d 835 (7th Cir.1996) (reversing where district court dismissed complaint at hearing, refusing to allow plaintiff opportunity to argue orally or make written submission); *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1051 (9th Cir.2005) (reversing sua sponte, pre-briefing dismissal of case on res judicata grounds where two different plaintiffs were involved and circumstances strongly indicated first plaintiff was inadequate representative for the second).

**AFFIRMED.**