George A. MATHIES, Appellant,

v.

UNITED STATES of America, Appellee.

No. 20026.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 14, 1966.

Decided Feb. 3, 1967.

Petition for Rehearing En Banc Denied April 13, 1967.

Mr. Grant Stetter, Washington, D. C. (appointed by this court), for appellant.

Mr. Geoffrey M. Alprin, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Before EDGERTON, Senior Circuit Judge, and BURGER and LEVENTHAL, Circuit Judges.

BURGER, Circuit Judge:

This is an appeal from a conviction arising out of a seventeen count indictment charging Appellant with robbery, assault with a dangerous weapon, carrying a dangerous weapon, and assault on a police officer.

Davis Realty Company was held up by a group of heavily armed men on the afternoon of March 2, 1965. Police alerted by a bystander arrived moments after the robbers departed by car. The citizen's description of the vehicle was broadcast over the police radio. Officer O'Brien, a member of the Traffic Division, promptly responded and pursued the described vehicle proceeding north on 11th Street. Detective Anastasi, in plain clothes and driving his private car which was equipped with a police radio, also heard the radio report of the robbery and observed the fleeing car behind him on 11th Street. He stepped out of his car with drawn pistol and called for surrender. In an exchange of gunfire with occupants of the fleeing car he was wounded. Anastasi identified Appellant as one of the four occupants of the car. Officer O'Brien, who witnessed the shooting, continued to give chase until the "getaway" vehicle collided with another car. Four men fled the vehicle. Two of them ran in one direction and the other two ran into a nearby alley. Officer O'Brien identified Appellant as one of the occupants who fled the car.

Additional officers converged on the scene and one of these, Detective Mitchell took up the search for the two men who had run into the alley. A block and a half away from the wreck, Detective Mitchell was informed by a bypasser that a man had just run from the direction of the wreck into a home at 619 U Street. Mitchell, who knew the owner of the house, informed her of the situation and then searched the premises. He found Appellant "hiding" in the basement, as he described it, and arrested him.

Appellant was then taken in a squad car to the robbery squad office, about a 15 minute ride, during which he admitted his part in the robbery; statements made to officers on this occasion were admitted in evidence. Questioning continued at the station but the trial judge excluded all statements elicited from Appellant after his arrival there. Appellant was presented before the Commissioner the following morning but was not indicted until four and one half months later.

Appellant makes several contentions on appeal: (1) That his Fifth and Sixth Amendment rights were violated by the admission of Appellant's oral statements obtained during an uncounseled interview in jail conducted by police between his arrest and indictment; (2) That there was no probable cause to arrest Appellant; (3) That the nineteen hour delay between his arrest and presentment before a Commissioner violated the rule articulated in Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957); and (4) That the four and one half month delay between his arrest and indictment violated his Sixth Amendment right to a speedy trial. We discuss these contentions in reverse order.

■ (1) Appellant's contention that he was denied his Sixth Amendment right to a speedy trial because four and one half months elapsed between his arrest and the return of the indictment must be rejected.[1] In the trial court Appellant moved to dismiss the indictment under Rule 48(b) of the Federal Rules of Criminal Procedure for "unnecessary delay" in presenting the charge to the grand jury. Appellant does not appeal from the denial of that motion. Instead, he claims a deprivation of his constitutional right to a speedy trial.

■ Rule 48(b) obviously does not grant the Appellant less rights than the Sixth Amendment. Indeed, it places a stricter requirement of speed on the prosecution, and permits dismissal of an

---

1. Generally a speedy trial claim is waived unless the right is asserted promptly. James v. United States, 104 U.S.App. D.C. 263, 261 F.2d 381 (1958), cert. denied, 359 U.S. 930, 79 S.Ct. 613, 3 L.Ed. 2d 631 (1959). For purposes of this appeal, however, we shall treat Appellant's motion to dismiss the indictment under Rule 48(b) of the Federal Rules of Criminal Procedure as the equivalent of a demand for a speedy trial. *Cf.* United States v. Fassoulis, 179 F.Supp. 645, 647 (S.D.N.Y.1959), aff'd, 293 F.2d 243 (2d Cir.), cert. denied, 368 U.S. 919, 82 S.Ct. 240, 7 L.Ed.2d 134 (1961).

indictment even though there has been no constitutional violation. Mann v. United States, 113 U.S.App.D.C. 27, 30–31, 304 F.2d 394, 397–398, cert. denied, 371 U.S. 896, 83 S.Ct. 194, 9 L.Ed.2d 127 (1962). Since Appellant claims no abuse of discretion by way of an appeal from denial of his Rule 48(b) motion, it would seem to follow that there was no denial of his Sixth Amendment right by the disposition of his motion under Rule 48(b).

■ Treating this appeal as raising the claim of abuse of discretion, however, we conclude that the district judge did not act in a "clearly unreasonable manner," Nickens v. United States, 116 U.S.App. D.C. 338, 323 F.2d 808, 811 (1963), cert. denied, 379 U.S. 905, 85 S.Ct. 198, 13 L.Ed.2d 178 (1964). Appellant makes no showing of "unnecessary delay," a standard recognized under Rule 48(b) and the Sixth Amendment. See United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966); Beavers v. Haubert, 198 U.S. 77, 87, 25 S.Ct. 573, 49 L.Ed. 950 (1905). Nor does Appellant make any claim of prejudice. See United States v. Ewell, supra, at 121, 86 S.Ct. 773. This is not a case where prejudice may be spelled out from restraint on liberty for an unreasonable period of time before trial. Petition of Provoo, 17 F.R.D. 183 (D.Md.), aff'd per curiam, 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761 (1955). Nor is the length of time involved such as to show that the delay was "arbitrary, purposeful, oppressive, or vexatious," a standard we have used in post-indictment delay cases. Smith v. United States, 118 U.S.App.D.C. 38, 41, 331 F.2d 784, 787 (1964). See Hedgepeth v. United States, 124 U.S.App.D.C. 291, 364 F.2d 684 (1966); Hedgepeth v. United States, 125 U.S.App.D.C. 19, 365 F.2d 952 (1966). We find no abuse of discretion in the denial of the motion to dismiss under Rule 48(b), and we hold that Appellant's constitutional right to a speedy trial was not violated.

■ (2) Appellant contends that a period of unnecessary delay occurred between his arrest and presentment in violation of Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). But the exclusionary principle of *Mallory* applies only to an accused's statements made during a period of "unnecessary delay." 354 U.S. at 453, 77 S.Ct. 1356. It does not bar all admissions made while in the custody of the police. See United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140 (1944); Long v. United States, 124 U.S. App.D.C. 14, 21, 360 F.2d 829, 833 (1966). The record reveals that the trial judge admitted only those statements elicited from Appellant immediately after his arrest and during the time Appellant was being transported to the station. We have consistently held that the *Mallory* principle is not applicable to statements made by an accused while being transported to police headquarters immediately after an arrest where it has not been shown that the interval was unnecessarily prolonged, *e.g.*, Perry v. United States, 102 U.S.App.D.C. 315, 253 F.2d 337 (1957), cert. denied, 356 U.S. 941, 78 S.Ct. 785, 2 L.Ed.2d 816 (1958); Ramey v. United States, 118 U.S.App.D.C. 355, 336 F.2d 743, cert. denied, 379 U.S. 840, 85 S.Ct. 79, 13 L.Ed.2d 47 (1964).[2] And delay *after* admissible statements have been made does not affect their admissibility under Mallory. United States v. Mitchell, *supra;* Heideman v. United States, 104 U.S.App.D.C. 128, 130, 259 F.2d 943, 945 (1958), cert. denied, 359 U.S. 959, 79 S.Ct. 800, 3 L.Ed.2d 767 (1959).

■ (3) Appellant's claim that there was no probable cause for his arrest is

2. As to the statements which were admitted, Appellant does not claim a violation of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), the applicable standard for his 1965 trial, and we find no violation. While the warning given fell short of that required in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), those rules are not applicable to Appellant's 1965 trial. See Johnson v. State of New Jersey, 384 U.S. 719, 86 S. Ct. 1772, 16 L.Ed.2d 882 (1966).

without merit as is shown by a recital of the circumstances of his arrest. At the precise moment of arrest, Detective Mitchell, the arresting officer, knew that a crime had been committed at Davis Realty Company, had observed the wrecked getaway car, had learned from Officer O'Brien that four men had fled the scene, and that two of them had entered an alley which exited on U Street. During a house-to-house search which followed immediately, he learned that a man had been observed running from the direction of the wreck and entering the premises at 619 U Street. Mitchell, as we have noted, found Appellant "hiding" in the basement. At that critical point abundant probable cause existed to believe that Appellant had fled into the house from the wrecked getaway car only a short distance away and, therefore, was probably one of the participants in the crime. *Cf.* Chappell v. United States, 119 U.S.App.D.C. 356, 359, 342 F.2d 935, 938 (1965).

■■■ (4) One troublesome problem arises out of the circumstances in which police officers questioned Appellant without notifying his counsel. Police explanation is that this interview was only to determine whether Appellant had in fact signed an affidavit exonerating one Swann, who was then in custody for alleged participation in the robbery. This aspect requires further development of the facts. One month after Appellant's arrest, and while he had retained counsel, the police received from Swann a letter protesting his innocence and claiming that another inmate of the jail had signed a sworn statement exonerating him. Swann gave the police a duly notarized affidavit purporting to be that of Appellant clearing Swann of any part in the robbery and reaffirming Appellant's participation. Presented with this affidavit, the Government contends that it had a duty to ascertain at once, and before Swann was charged or further held, whether the affidavit was genuine. A confrontation was arranged between Swann, Appellant, and the police. Appellant promptly admitted the validity of the affidavit and orally reaffirmed his participation in the robbery after being advised of his rights. As a result Swann was released and not indicted. At the hearing on his motion to suppress statements made at this confrontation, Appellant again admitted the genuineness of the affidavit, stating that his then retained counsel had approved its execution before it was delivered to Swann.

The Government urges that the affidavit was *not* the "fruit" of any police activity, legal or otherwise; on this record we agree. Nor is it disputed that at this confrontation Appellant was given timely warning of his rights. In our view, however, this episode requires comment, for it is surely clear in retrospect —and should have been anticipated— that any confrontation of Swann, the police and Appellant on the subject of the incriminating writing attributed to Appellant would inevitably give rise to further discussions which would indicate that his counsel should be advised. We note that in other cases the United States Attorney has stated a policy to have counsel for accused persons advised of all interrogation sessions. See Ricks v. United States, 118 U.S.App.D.C. 216, 222 n. 18, 334 F.2d 964, 970 n. 18 (1964). Similarily, in the area of civil litigation—a personal injury case, for example—the attorney for one litigant is forbidden to "interview" the opposing litigant except with his counsel present. CANON 9, A.B.A. CANONS OF PROFESSIONAL ETHICS. At oral argument counsel for the Government did not undertake to justify but only sought to explain how this episode developed. We assume that the episode will not arise again in the future.[3]

■■■ On this record, however, any suggestion of prejudice is negated by the fact that the affidavit of Appellant, which he freely signed and freely reaffirmed at the time of trial, could have

---

3. The prospective application of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), plainly will require that such interviews can be conducted only after counsel has been given an opportunity to be present.

been received in evidence without the confrontation or Appellant's oral affirmation. A showing that it was sworn to before the Notary Public would have established a sufficient foundation to render it admissible. See 7 WIGMORE, EVIDENCE §§ 2161–68 (3rd ed. 1940). On the record here there is no indication of prejudice to Appellant and we see no need to order a new trial merely to press home our firm conclusion that Appellant's counsel should have been given an opportunity to be present at the interview.

Affirmed.